IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

OMNI USA, INC.,                    §
                                   §
            Plaintiff,             §
                                   §
VS.                                §    CIVIL ACTION H-10-4728
                                   §
PARKER-HANNIFIN CORPORATION,       §
                                   §
            Defendant.             §

**OPINION AND ORDER**

The above referenced action alleges that Defendant Parker-Hannifin Corporation ("Parker") improperly designed, manufactured, marketed, and serviced defective industrial oil seals sold to Plaintiff Omni USA, Inc. ("Omni") specifically for use in its gearboxes as part of agricultural irrigation systems sold to a third party.  The Original Petition (#1, Ex. B) asserts claims for breach of express warranties, breach of implied warranties, breach of contract, violations of the Texas Deceptive Trade Practices--Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (allowing recovery for breach of warranty and misrepresentation), fraudulent inducement, negligent misrepresentation, fraud, and attorney's fees.

Pending before the Court is Parker's motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), 8, and 9(b) and,

alternatively, motion for more definite statement under Rule 12(e) (instrument #2).

## Standards of Review

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." All well pleaded facts must be viewed as true, "in the light most favorable to the plaintiff. *Lindquist v. City of Pasadena, Texas*, 525 F.3d 383, 386 (5th Cir. 2008). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also the 'grounds' on which the claim rests." *Id.* at 555, n.3. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, ____ U.S. ____, 129 S. Ct. 1937, 1949 (2009), *citing Twombly*, 550 U.S. at 556.

Fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): "In allegations alleging fraud . . ., a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Fifth Circuit strictly construes the Rule and requires the plaintiff pleading fraud in federal court "'to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty & Crumrine Preferred Income Fund, Inc,. v. TXU Corp.*, 565 F.3d 200. 206-07 (5th Cir. 2009)(*quoting Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997), *cert. denied*, 130 S. Ct. 199 (2009)).[1] A dismissal for failure to plead with particularity as required by this rule is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

---

[1] In contrast Texas only requires the plaintiff to plead that the defendant made "a material misrepresentation, which was false and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008), *quoting Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W. 2d 925, 929-30 (Tex. 1996).

Because "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not," it applies to statutory claims based on allegations of fraud. *Lone Star Ladies Inv. Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994). "Claims alleging violations of the Texas Insurance Code and the Deceptive Trade Practices Act . . . are subject to the requirements of Rule 9(b)." *Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 734, 742-43 (S.D. Tex. 1998). *See also, e.g., Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824-25 (N.D. Tex. 2001)(and cases cited therein)("[C]laims alleging violations of the DTPA are subject to the requirements of Rule 9(b)."); *Flowserve Corp. V. Hallmark Pump Co.*, 2010 WL 2232285, *6 (S.D. Tex. Feb. 3, 2010)(same). Where "[t]he factual background of . . . claims is substantively identical," causes of action arising under DTPA, the Texas Insurance Code, or common law fraud must satisfy Rule 9(b), which reaches "all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith*, 9 F. Supp. 2d at 742, *citing Berry*, 608 F. Supp. 2d at 789, 800; *Hernandez v. Ciba-Geigy Corp., USA*, 200 F.R.D. 285, 290-91 (S.D. Tex. 2001). The same is true of claims for negligent misrepresentation where the factual allegations underlying it and

a fraud claim are the same. *Benchmark Elecs. v. J.M. Huber Corp.,* 343 F.3d 719, 723 (5th Cir. 2003)("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims. . . . That is the case here, as Benchmark's fraud and negligent misrepresentation claims are based on the same set of alleged facts."), *citing Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Berry v. Indianapolis Life Ins. Co. ("Berry II"),* No. 3:08-CV-0248-B, 2010 WL 3422873, *16 (N.D. Tex. aug. 26, 2010), *citing Benchmark* and *Biliouris v. Sundance Res., Inc.,* 559 F. Supp. 2d 733, 737 (N.D. Tex. 2008)(dismissing negligent misrepresentation claim based on the same operative facts as an insufficient fraud claim).

Federal Rule of Civil Procedure 15(a)(2) states, "The court should freely give leave [to amend the pleadings] when justice so requires."  The decision whether to permit amendment "is entrusted to the sound discretion of the district court." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).  Nevertheless, the Fifth Circuit has commented that the term "discretion" "'may be misleading because Fed. R. Civ. P. 15(a) evinces a bias in favor of granting leave to amend.'"  *Mayeaux v. Louisiana Health Serv. & Indemn. Co.*, 376 F.3d 420, 425 (5th Cir. 2004)(citation omitted).  "[A]bsent a 'substantial reason' such as undue delay, bad faith,

dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, 'the discretion of the district court is not broad enough to permit denial.'"   *Id.* (citation omitted).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]").

Federal Rule of Civil Procedure 15(a) provides in relevant part,

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of

court or by written consent of the adverse party; and
leave shall be freely given when justice so requires.

A court has discretion in deciding whether to grant leave to amend.
*Foman v. Davis*, 371 U.S. 178, 181 (1962).  Since the language of
the rule "'evinces a bias in favor of granting leave to amend," the
court must find a "substantial reason" to deny such a request.
*Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins.
Co.*, Civ. A. No. H-05-4389, 2006 WL 2521411, *3 (S.D. Tex. Aug. 29,
2006), *quoting Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir.
2004), and *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420,
425 (5th Cir. 2004).  Factors for the court to consider in
determining whether a substantial reason to deny a motion for leave
to amend include "undue delay, bad faith or dilatory motive on the
part of the movant, repeated failure to cure deficiencies by
amendments previously allowed, undue prejudice to the opposing
party, and futility of amendment."  *Wimm v. Jack Eckerd Corp.*, 3
F.3d 137, 139 (5th Cir. 1993).  The court should deny leave to amend
if it determines that "the proposed change clearly is frivolous or
advances a claim or defense that is legally insufficient on its
face . . . ."  6 Charles A. Wright, Arthur R. Miller & Mary Kay
Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

### Factual Allegations of the Original Petition[2]

The petition asserts that in 2004 Omni met with Parker's sales representative Ronnie Lovett in Omni's Houston office.  Lovett verbally represented to Omni that Parker would be fully capable of designing and manufacturing high quality seals for Plaintiff's gear boxes, which it would then sell to T-L Irrigation Company ("T&L") for use in its agricultural irrigation systems.  Based on this representation, Plaintiff agreed to have Parker design and manufacture the seals.  The parties agreed that Defendant would have final design control over the design and over manufacture of the seals.  Lovett also represented that Parker would be able to design and manufacture a high quality cartridge seal for Plaintiff's gear box that would meet or exceed the seal quality of Omni's competitors.

From 2005-07 Parker began supplying Plaintiff with the seals, which Omni installed in its gear boxes and forwarded to T&L, which then sold them to end-users.  Omni made several payments to Parker, and Parker sent several invoices to Plaintiff.  On the back side of some of these invoices was an express warranty, including the statement "Seller warrants that the items sold hereunder shall be free from defects in material or workmanship at the time of the

---

[2] This action was removed from the 152nd Judicial District Court of Harris County, Texas based on diversity jurisdiction.  The removal is not contested.

delivery," along with purported disclaimers.   Ex. A (entitled "Standard Terms of Sale") to #2.

At some point after 2007, T&L notified Omni that at least some of the gear boxes were leaking oil in the field because of a problem in the design and/or manufacturing process of the seals. Omni promptly notified Parker and suspended payment to Parker until the defective design could be resolved.

Parker has disclaimed responsibility for the seal design and/or manufacturing and blamed faulty design failures on Plaintiff.   Omni, upon information and belief, asserts that Parker changed its materials supplier during the production of the seals and that Parker chose and used inferior materials that directly caused the leakage.   Parker also allegedly changed the seal's "rib" design during the process of production, evidencing Parker's own testing and attempt to correct the design problems.

The petition highlights Parker's website claims that Parker is the "world's leading diversified manufacturer of motion and control technologies and systems, providing precision-engineered solutions for a wide variety of mobile, industrial and aerospace markets" and that "Parker seals can handle the most challenging applications known to man."   Ex. B.   Omni states that Parker represented directly to it and through its website that "Parker EPS Division is more than a seal manufacturer--we work with you to solve problems-- allowing you to get your products to market quickly and safely."

Omni and T&L continued to report incidents of leakage to Parker, which later indicated that it found certain defects in the design and proposed to correct the deficiencies, but in return it required Plaintiff to agree to make future seal purchases from Parker at a much higher price.

Omni's cause of action for breach of express warranties is based on those made by Parker's representative(s), the invoices, employee(s), officer(s) and/or website.

Omni also claims that Parker, a merchant as to its seals, breached the implied warranties of merchantability and fitness for a particular purpose in T&L's irrigation systems.

Omni alleges that Parker materially breached their performance contract by providing Omni with defective seals and failing to provide adequate replacements.

Moreover Omni insists that Parker's representations regarding the quality of its seals and regarding its intention to provide an adequate and fair replacement were false, misleading and deceptive and constituted knowing violations of the DTPA, warranting up to treble damages, in particular of the following subsections of Texas Business & Commerce Code § 17.46(a):  (3) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a

person has a sponsorship, approval, status, affiliation, or connection which he does not have; (7) representing that goods or services are of a particular style or model, if they are of another; (9) advertising goods or services with the intent not to sell them as advertised; and (24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Omni also argues that these false representations fraudulently induced it to enter into the contract.

Omni further claims that these statements were negligent misrepresentations that were an integral part of the performance contract between Omni and Parker, which also promised that Parker would create and register a patent for its seal design.

Finally Omni alleges fraud in Parker's false misrepresentations, which were made with the intent that Omni would rely on them, and Omni did rely on them to its detriment.

### Parker's Motion to Dismiss, or,

### Alternatively, Motion for More Definite Statement (#2)

Parker moves for dismissal on three grounds: (1) the alleged misrepresentation (that Parker would be able to design a seal for Omni's gearbox that would exceed the seal quality of Plaintiff's

competitors), on which Omni's causes of action for violations of the Texas DTPA, fraudulent inducement, negligent misrepresentation, and fraud are based, is not a misrepresentation of material fact and is not actionable as a matter of law; (2) the "Standard Terms of Sale,"[3] on which Omni bases its warranty claim, limits or prohibits many of Omni's claims for relief, including any claim except for the express warranty provided in the "Standard Terms of Sale" and any remedy except for repair, replacement or refund of the purchase price; and (3) the "Standard Terms of Sale" provides that Ohio law governs, so the Texas DTPA claim must be dismissed along with Omni's claims for exemplary or treble damages under the Texas DTPA and attorney's fees under the Texas Civil Practice and Remedies Code Chapter 38.

Regarding the first ground, Parker notes that the common law fraud, DTPA, fraudulent inducement, fraudulent concealment, and negligent misrepresentation claims are all premised on fraud, indeed on the same allegations, and thus are subject to the heightened pleading requirements of Rule 9(b)(who, what, when, where and how fraudulent).  Parker argues that Lovett's representation that Parker could design and manufacture seals that met or exceeded the quality of its competitors is not a

---

[3] A copy of the Standard Terms of Sale is attached as Exhibit A to the Original Petition, copies of which are found at #1, Exhibit B, and #2-1 (Exhibit A).  It purportedly was printed on the reverse sides of some of Parker's invoices.

representation of material fact, but an opinion, or mere puffing, and is not actionable as a matter of law under both Ohio and Texas law.  *Trenholm v. Ratcliff*, 646 S.W. 2d 927, 930 (Tex. 1983)(With limited exceptions the representation must concern a material fact; a pure expression of opinion or puffery will not support an action for fraud.).  It should be dismissed for failure to satisfy Rule 9(b).  Under Texas law, *see, e.g., Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029 (5th Cir. 2010)(dismissing claim of fraudulent misrepresentation for failure to meet standards of Rule 9(b)); *Heard v. Monsanto Co.*, No. 07-06-0402, 2008 WL 1777989 (Tex. App.--Amarillo, Apr. 18, 2008, no pet.)(statements not actionable because they only compared defendant's product with other products and claimed superiority); *Autohaus, Inc. v. Aguilar*, 794 S.W. 2d 459, 464 (Tex. App.--Dallas 1990, writ denied)("Generally statements that compare one product to another and claim superiority are not actionable misrepresentations."); *Chandler v. Gene Messer Ford, Inc.*, 81 S.W. 3d 493, 499-501 (Tex. App.--Eastland 2002, pet. denied)(salesperson's representations that a certain automobile was safer than a different type of automobile were not misrepresentations of material fact or false or misleading under the DTPA, but mere "sales talk" or "puffing"); *Cleveland Mack Sales, Inc. v. Foshee*, No. 13-00-00059-CV, 2001 WL 1013393, *4-6 (Tex. App.--Houston [14[th] Dist.] Sept. 6, 2001, pet. denied)(statement that plaintiff would receive a new tractor,

typical of defendant's tractor business, delivered to plaintiff's specifications, amounted to mere puffing and not actionable under the DTPA).[4]  Under Ohio law, *see, e.g., Cliff v. Loudenslager*, No. CA2006-01-002, 2006 WL 3186541, *3-4 (Ohio Ct. App. Nov. 6, 2006)(real estate agent's statement that buyers were "getting a wonderful house" was not a fraudulent misrepresentation); *Akers v. Classic Props., Inc.*, No. CA2003-03-035, 2003 WL 22326605, *5 (Ohio Ct. App. Oct. 13, 2003)(subdivision brochures promoting four-foot wide sidewalks to be "bike and walking trails" was not a misrepresentation of material fact or a warranty, but mere puffing along with other brochure representations); *Dent v. Fort Motor Co.*, 614 N.E.2d 1074, 1077 (Ohio Ct. App. 1992)(holding there was no evidence of fraudulent representations or express warranties in Ford's advertising slogans, "Built Fun Tough" or "best in America."). Parker claims that Omni fails to provide any specifics showing how the representations of Parker were misrepresentations of material fact, e.g., how the specifications of Parker's seals are different from those of its competitors and/or that the sales

---

[4] The court in *Cleveland Mack*, 2001 WL 1013393, *4, also noted that in determining whether a statement is one of fact or one of opinion involves consideration (1) of "the specificity of the alleged misrepresentation, (2) the comparative knowledge between the buyer and seller, and (3) whether the representation concerns past or present conditions, or future considerations. Misrepresentations concerning future conditions or performance of a good are actionable under the DTPA.  Imprecise or vague statements are generally considered puffing and are not actionable under the DTPA, while statements of material fact are actionable.").

representative knew the representations were false at the time he made them.   Thus Omni's claims of violations of the DTPA, fraudulent inducement, negligent misrepresentations and fraud should be dismissed.

Moreover, sections 4 and 5 of the "Standard Terms of Sale," taken from back of some Parker invoices (Exhibit A to the Notice of Removal, #1, and #2-1), in small print although capitalized in large part, provides in relevant part:

> 4.   Warranty:   Seller warrants that the items sold hereunder shall be free from defects in material or workmanship at the time of delivery.   THIS WARRANTY COMPRISES THE SOLE AND ENTIRE WARRANTY PERTAINING TO ITEMS PROVIDED HEREUNDER.   SELLER MAKES NO OTHER WARRANTY, GUARANTEE, OR REPRESENTATION OF ANY KIND WHATSOEVER.   ALL OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO, MERCHANTIBILITY [*sic*] AND FITNESS FOR A PARTICULAR PURPOSE, WHETHER EXPRESS, IMPLIED, OR ARISING BY OPERATION OF LAW, TRADE USAGE, OR COURSE OF DEALING ARE HEREBY DISCLAIMED.
>
> NOTWITHSTANDING THE FOREGOING, THERE ARE NO WARRANTIES WHATSOEVER ON ITEMS BUILT OR ACQUIRED WHOLLY OR PARTIALLY, TO BUYER'S DESIGNS OR SPECIFICATIONS.
>
> 5.   Limitation of Remedy:   SELLER'S LIABILITY ARISING FROM OR IN ANY WAY CONNECTED WITH THE ITEMS SOLD OR THIS CONTRACT SHALL BE LIMITED EXCLUSIVELY TO REPAIR OR REPLACEMENT OF THE ITEMS SOLD OR REFUND OF THE PURCHASE PRICE PAID BY BUYER, AT SELLER'S SOLE OPTION.   IN NO EVENT SHALL SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL OR SPECIFIC DAMAGES OF ANY KIND OR NATURE WHATSOEVER, INCLUDING BUT NOT LIMITED TO LOST PROFITS ARISING FROM OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR ITEMS SOLD HEREUNDER, WHETHER ALLEGED TO ARISE FROM BREACH OF CONTRACT, EXPRESS OR IMPLIED WARRANTY, OR IN TORT, INCLUDING WITHOUT LIMITATION, NEGLIGENCE, FAILURE TO WARN OR STRICT LIABILITY.

Parker contends that such limitations of liability are valid and enforceable under both Ohio and Texas law. *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins.*, 537 N.E. 2d 624, 638-40 (Ohio 1989); *Collins v. Click Camera & Video, Inc.*, 621 N.E. 2d 1294, 1298-99 (Ohio Ct. App. 1993); *Bergholtz v. Southwester Bell Yellow pages, Inc.*, ___ S.W. 3d ___, 2010 WL 1896413, *3-4 (Tex. App.--El Paso 2010, no pet.); *Fox Elec. Co., Inc. v. ToneGuard Sec., Inc.*, 861 S.W. 2d 79, 82-83 (Tex. App.--Fort Worth 1993, no pet.). As a result, all of Omni's claims except the express warranty that the items sold were free from defects in material or workmanship at the time of delivery should be dismissed, including breach of express warranties and breach of implied warranties. Any claim for damages other than the purchase price of the seals must be dismissed, including claims for "the reasonable cost of acquiring replacement seals, the reasonable cost of replacing affected parts, the reasonable cost of acquiring field repair kits, payments for field labor paid to dealers, freight payments, and payments on shop labor to reseal and/or recondition additional field repair costs" (Orig. Pet. at p. 11). So, too must Omni's claims for economic damages (benefit-of-the-bargain damages or, alternatively, out-of-pocket damages, including Omni's additional management expenses and additional management expenses sought from Omni by T&L, lost profits, loss of credit, and loss of goodwill (Orig. Pet. at p. 11).

Next, Omni argues that because according to the "Standard Terms of Sale," Ohio law governs, those claims and remedies not recognized by Ohio law should be dismissed, including Texas DTPA claims.  Moreover the Ohio Deceptive Trade Practices Act does not provide for exemplary or treble damages, although Omni seeks them under the Texas DTPA.

Parker further insists that Omni's petition does not contain factual allegations that are plausible and rise above mere speculation.  There is no allegation that the seals were defective when delivered, but only that after 2007 some gearboxes containing them began leaking.  While Omni asserts that "it is believed that Omni admitted to failures in Defendant's seal design and in the quality control aspects of Defendant's manufacturing process," Omni's belief does not state a claim upon which relief may be granted and its allegations fail to rise above mere speculation.

Nor does Omni adequately plead breach of contract under Ohio's law, asserts Parker vaguely.[5]  It generally asserts a performance

---

[5] The Court is not sure specifically what Parker means.  Under Ohio law, valid contracts may be either written or oral. *Stainbrook v. Fox Broadcasting Co.*, No. 3:05 CV 7380, 2006 WL 3757643, *5 (N.D. Ohio Dec. 19, 2006), *citing Kostelnik v. Helper*, 96 Ohio St.3d 1, 3 (2002).  The elements of a breach of contract claim are similar and certainly not at odds with those under Texas law:  (1) the existence of a valid contract, (2) performance by Plaintiff, (3) breach by Defendant, and (4) damage to Plaintiff. *Id., citing Doner v. Snapp*, 98 Ohio App.3d 597, 601 (1994).  For a valid contract, plaintiff "must show 'an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Id., citing Kostelnik*,

contract, but fails to identify it.   Omni does not identify the elements for a breach of contract under Ohio law or specify how the contract was breached.   Indeed Omni's breach of contract claim appears to be the same as its breach of express warranty claim, also speculative.   The claim also should be dismissed.

Alternatively, Parker request that the Court order Plaintiff to re-plead to make a more definite statement, pursuant to Rule 12(e).

### Omni's Response (#6)

Omni recites the elements of each of its claims under Texas law and insists that it has asserted plausible claims that meet the requirements of federal pleading standards.

Omni also insists that the terms of the "Standard Terms of Sale," recently discovered on the reverse side of one of Parker's invoices, are only an additional basis for Omni's claim of breach

---

96 Ohio St.3d at 3.   *See, e.g., James M. Clifton, Inc. v. Premillenium, Ltd.*, 229 S.W. 3d 857, 859 (Tex. App.--Dallas 2007)("The elements of a breach of contract claim are (1) the existence of a valid contract between the plaintiff and defendant, (2) the plaintiff performed, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach."); *Prime Products, Inc. v, S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.--Houston [1st Dist.] 2002, rev. denied)("The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. . . . In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding those communications.").
Both states have adopted the UCC.

-18-

of express warranties, which is not dependent on these "standard terms," which it dubs "the attempted modification." Furthermore, any attempted modification of a contract for the sale of goods for the price of $500 or more must satisfy the requirements of the Statute of Frauds,[6] including  that the modification be "signed by the party against whom enforcement is sought." Tex. Bus. & Com. Code § 2.209(c), § 2.201; *see Enserch Corp. v. Rebich*, 925 S.W. 2d 75, 83 (Tex. App.--Tyler 1996)(defining modification of a contract as "some change in an original agreement which introduces a new or different element into the details of the contract but leaves its general purpose and effect undisturbed). Omni maintains that Parker's attempted modification should not bind Omni because Omni did not suggest, draft, incorporate, sign or otherwise agree to any portion of it. Moreover Omni notes that while Parker argues that its liability is "limited exclusively to repair or replacement of the items sold or refund of the purchase price paid," Parker attempted to undo its fault by demanding that Omni purchase replacement seals at a higher price than the replacement cost or refunding the purchase price without additional conditions.

There was no formal contract between the parties, but only a performance contract, responds Omni. Even if Parker's attempted

---

[6] The Statute of Frauds provides that an agreement which is not to be performed within one year from the date of the making of the agreement must be in writing to be enforceable. Tex. Bus. & Com. Code Ann. § 26.01(b)(6)(Vernon 2009).

modification of the performance contract constituted additional

terms under Tex. Bus. & Com. Code § 2.207(b),[7] any additional terms

that materially alter a contract drop out and do not become part of

the contract.  Tex. Bus. & Com. Code § 2.207(b)(1-2).[8]  This Court

_____

[7]  Section 2.207, "Additional Terms in Acceptance or Confirmation," provides,

> (a) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

> (b) The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless"

> (1) the offer expressly limits acceptance to the terms of the offer;

> (2) they materially alter it; or

> (3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

> (c)  Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract.  In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.

[8] Section 2.207(b) in relevant part provides,

The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:

has held that "delivery ticket[s] or invoice[s] [are] not documents that [can] propose additional terms in the first place." *Enpro Sys. v. Namasco Corp.*, 382 F. Supp. 2d 874, 882 (S.D. Tex. 2005).

Omni further argues that each transaction agreed to between the parties involved the sale of goods for the price of $50,000 or less. The Texas Business & Commerce Code imposes added requirements that "[i]f a contract contains a provision making the contract or any conflict arising under the contract subject to another state's laws, litigation in the courts of another state, or arbitration in another state, that provision must be set out conspicuously in print, type, or other form of writing that is boldfaced, capitalized, underlined, or otherwise set out in such a manner that a reasonable person against whom the provision may operate would notice the provision." Tex. Bus. & Com. Code § 273.001, *et seq.*, § 273.002. If one assumes that Parker's attempted modification of the performance contract could constitute additional terms that were not material, all of the attempted modification, including the choice of law clause, was not conspicuous, but was buried in diminutive print on the reverse side of the invoice. "A contract provision that does not comply with § 273.002 is voidable by a party against whom the provision is sought

---

(1) the offer expressly limits acceptance to the terms of the offer;

(2) they materially alter it . . . .

-21-

to be enforced." Tex. Bus. & Com. Code § 273.003. Section 273.002 states, "If a contract contains a provision making the contract or any other conflict arising under the contract subject to another state's laws, litigation in the courts of another state , or arbitration in another state, that provision must be set out conspicuously in print, type, or other form of writing that is boldfaced, capitalized, underlined, or otherwise set out in such a manner that a reasonable person against whom the provision may operate would notice the provision." Therefore Texas law would still govern the parties' agreement.

Finally, should the Court determine that Omni has failed to show a plausible claim to relief, it requests permission to amend its pleadings.

### Parker's Reply (#9)

After repeating earlier arguments, Parker replies that if there is no "formal contract," Omni cannot bring a breach of contract action and other causes of action under the Texas Business and Commerce Code because they would be barred by the statute of frauds. Section 2.201(a) of the Texas Business and Commerce Code provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made by the parties." Furthermore, Omni's causes of action under the Texas Business and Commerce Code Article 2 should

-22-

be dismissed if this is not a dispute regarding the sale of goods because Article 2 only applies to a sale of goods, as opposed to a "performance contract."  Tex. Bus. & Com. Code § 2.102.

Parker claims that while Omni contends that the Standard Terms of Sale are a modification to the contract that must be in writing, Tex. Bus. & Com. Code § 2.209(c), Omni ignores that the original contract must have been in writing, consistent with the long-standing rule that a modification to a contract required to be in writing must also be in writing.  *See, e.g., Robertson v. Melton*, 115 S.W.2d 624, 626-27 (Tex. 1938); *BACM 2001-1 San Felipe Rd. Ltd. P'ship v. Trafalgar Holdings I, Ltd.*, 218 S.W. 3d 137, 145 (Tex. App.--Houston [14th Dist.] 2007, pet. denied).  Yet Omni concedes there is no written contract.[9]

While Omni argues that additional terms that materially alter a contract drop out and do not become part of the contract, it has not pled that the contract was materially altered (Omni's Response, ¶ 15).  Section 2.2087, cited by Omni, states that such additional terms become a party of the contract unless they materially alter

_____

[9] The Court observes that the parties need to distinguish their claims under Texas' adoption of Article 2 of the UCC, embodied in the Texas Business and Commerce Code §§ 2.101, *et seq.*), which governs the obligations of buyers and sellers of goods, from claims for breach of contract under common law, as there are different requirements for each.  The UCC supersedes the common law and to the extent that a question cannot be resolved under the UCC, courts usually look to the common law.  *Id.* § 1.303(b); *United Galvanizing, Inc. v. Imperial Zinc. Corp.*, Civ. A. No. H-08-0551, 2011 WL 11185, *9 (S.D. Tex. Jan. 3, 2011), *citing Davidson v. FDIC*, 44 F.3d 246, 253 n.7 (5th Cir. 1995).

it, but Omni's Petition does not assert that the Standard Terms of Sale are "additional" terms.   Moreover Omni did not recently discover them; paragraph 8 of the petition states that Omni began receiving them on the reverse side of invoices when it began purchasing the seals from Parker in 2005.   Omni also bases its breach of warranty claims on the Standard Terms of Sale according to paragraphs 8 and 16-21, but it cannot do so if the Standard Terms of Sale document is not enforceable.

Finally, although Omni argues that Texas Business and Commerce Code Chapter 273 makes the choice of law provision in the Standard Terms of Sale inapplicable, Chapter 273 applies to a contract only if, among other things, "the contract is for the sale, lease, exchange, or other disposition for value of goods for the price, rental or other consideration of $50,000 or less."   Tex. Bus. & Com. Code § 273.99(1).   Omni has pleaded there is no formal contract and it has demanded $758,867.24 from Parker.   Thus the Standard Terms of Sale applies, as does the choice of law provision in the Standard Terms of Sale.

### Omni's Supplemental Response (#10)

Omni has not only asserted a misrepresentation that Parker characterizes as puffing, but it has also alleged that Parker, in person and through its website, made material misrepresentations about its proficiencies, skills, and capability to produce the cartridge seals at issue here.   Orig. Petition, ¶ 6,7,11,29,31,32.

-24-

Omni's claims under the Texas DTPA assert that Omni's goods and services did not possess the approval, characteristics, standard, quality or grade that Parker had represented.  Furthermore, Omni states, "Defendant's misrepresentations in whole necessarily encompass the lesser representations in parts.  Omni is not suing Parker because the seals were not the best, but because Parker lacked the skills that it advertised."

Omni also maintains that the original agreement between the parties was a performance between merchants that was later confirmed through invoices.  Tex. Bus. & Com. Code § 2.201 and §§ 2.204, *et seq.*  Omni's reference to a "formal contract" simply recognized that there was no written contract.  Although Parker claims that a modification to "a contract required to be in writing must also be in writing," Parker ignores the fact that the agreement was one between merchants and that a written contract is not required.  Parker fails to provide any authority that just because a contract was modified in writing, the original agreement had to be in writing.

Omni also argued in the alternative that the Standard Terms of Sales' additional terms about the choice of law were material and would therefore drop out as a result, in response to Parker's contention that the choice of law provision was inconspicuous.

Moreover Parker should be estopped from arguing that there was no agreement because it has pled that a "contract for sale was made." Tex. Bus. & Com. Code § 2.201(c)(2).

Omni insists that Parker misstates its correct position that the inconspicuous terms on the reverse side of received invoices were additional terms. Omni maintains that it is well settled under Texas law that a confirmation may contain terms that were agreed upon, but it does not confirm the additional terms that were not agreed upon. *Tubelite v. Risic & Sons, Inc.*, 819 S.W. 2d 801, 804 (Tex. 1991). The inconspicuous choice of law clause was an additional, material term that was not agreed upon by Omni.

In contrast, Omni argues that the express warranty clause may have been equally inconspicuous, it was an obligation promised by Parker and not a material term to which Omni would object. Even if the inconspicuous express warranties dropped out of the agreement, Omni has alleged other claims for violations of express warranties. Orig. Pet., § 18 (express warranty through advertising and website and Lovett).

Lastly, to Parker's argument that the original agreement must have been for the amount of the resulting damages alleged for § 273.002 to apply, Omni insists the Code addresses the value of the "contract."

**Court's Ruling**

-26-

Omni relies on 4(a) of the Standard Terms of Sale (on the reverse side of some of Parker's invoices)[10] for part of its breach-of-express-warranty claim, while Parker insists rest of the document severely limits Omni's remedies.  As a threshold matter, because *inter alia* The Standard Terms of Sale, if part of the agreement, also determines whether Texas or Ohio law governs this action, the Court initially considers whether the pleadings establish a claim that the "Standard Terms of Sale" is part of, an attempt to modify, or a modification of the parties' unwritten performance agreement and binds both.

To prove the existence of an enforceable contract, a party must demonstrate (1) an offer, (2) acceptance of the offer, (3) mutual assent or "meeting of the minds" about the subject matter and the essential terms of the contract, and (4) consideration or mutuality of obligations.  *International Metal Sales, Inc. v. Global Steel Corporation and Global Steel Corp.*, No. 03-07-00172-CV, 2010 WL 1170218, * 7 (Mar. 24, 2010), *citing Baylor Univ. v. Sonnichsen*, 221 S.W. 3d 632, 635 (Tex. 2007).

Article 2 of the Texas UCC, Section 2.204 supplements these elements by providing that a "contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." *Id., citing* Tex. Bus. & Commerce Code Ann. § 2.204(a)(West 2009).

---

[10] Exhibit A to the Original Petition, #2.

Section 2.206(a)(1) of the same Code states that unless unambiguously demonstrated otherwise, "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." *Id., also citing* Restatement (Second) of Contracts § 24 (1981)("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."). Thus here there was a contract, though no writing memorializing it, once Omni ordered seals from Parker and Parker delivered them to Omni, i.e., the delivery constituting an acceptance through a manner or medium reasonable under the circumstances. *Id.*[11]

The UCC's statute-of-frauds provision does not require a writing where goods have been received and accepted. *International Metal Sales*, 2010 WL 1170281, at *9, *citing* Tex. Bus. & Com. Code Ann. § 2.201(c)(3)("A contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable . . . with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2.606).") *See Barrington Group Limited, Inc. v. Classic*

_____

[11] *See also* § 2.206(a)(2)("an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods."). The Petition in this action fails to state how quickly after the first or any purchase offer from Omni Parker shipped the seals, so this section may or may not be applicable.

*Cruise Holdings S. De R.L.*, Civ. A. No. 3:08-CV-1812-B, 2010 WL 184307,*7 (N.D. Tex.)(Section 2.201(c)(3) "provides that a contract that does not satisfy the statute of frauds is nevertheless enforceable 'with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2.606)."). Moreover, "an oral modification that would itself form a binding contract in the absence of Statute of Frauds considerations can be binding on the parties to a sale of goods over $500 insofar has specific goods have been received and accepted" under Tex. Bus. & Com Code § 2.201(c)(3). *Brookside Farms v. Mama Rizzo's, Inc.*, 873 F. Supp. 1029, 1033 (S.D. Tex. 1995).

Neither party indicates how many invoices were sent to Omni and how many of those contained the Standard Terms; clearly it was not a consistent part of a course of dealings between the two. Moreover, whether Parker can establish that the few invoices containing it constitute a "confirmation" of the whole agreement under what is known as the "merchant's exception" of Tex. Bus. & Com. Code § 2.207(c)[12] remains a question. Omni's Petition and

---

[12] Section 2.207, "Additional Terms in Acceptance or Confirmation," provides,

(a) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different

Parker's response fail to provide key facts for demonstrating whether the Standard Terms of Sale became part of the contract or constituted a modification of the terms of the contract or comprised a confirmation or terms of the contract.

In *Enpro Sys., Ltd. v. Namasco Corp.*, 382 F. Supp. 2d 874, 876-80 (S.D. Tex. 2005), the plaintiff ordered a steel plate from the defendant, which was delivered in a timely manner to the plaintiff.  The defendant also sent a delivery ticket with the order that, similar to the Standard Terms of Sale, disclaiming all warranties, and, after the delivery, an invoice confirming the terms of that delivery ticket.  The defendant argued that the terms

---

terms.

(b) The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:

(1) the offer expressly limits acceptance to the terms of the offer;

(2) they materially alter it; or

(3) after notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(c) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writing of the parties do not otherwise establish a contract.  In such case the terms of the particular contract consists of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.

in those writings, including limitations of liability, became part
of the contract.  The court disagreed, concluding that "the
contract formation occurred when [the defendant] accepted the offer
by shipping the steel plate, before [the plaintiff] had any
opportunity to review the ticket/invoice terms," and "probably as
early as the moment the steel left [the defendant] for shipment to
[the plaintiff], and certainly by the time it arrived at [the
plaintiff's] receiving department . . . each party had an
enforceable contract against the other."  *Id.* at 880.  *See also*
*Tubelite v. Risica & Sons, Inc.*, 819 S.W. 2d 801, 804 (Tex.
1991)(finding that the offer and acceptance occurred before the
forms containing the additional terms (including interest charge in
the event of late payment) were sent, and holding that statements
of account sent after delivery of the goods were not
"confirmations" within the meaning of § 2.207); *Am. Bus.*
*Information, Inc. v. Classic Uniforms*, No. 04-01-00199-CV, 2002 WL
197936, * (Tex. App.--San Antonio Feb. 6, 2002)(after buyer's faxed
proposal was a "firm offer for 30 days" and was signed by the agent
of the seller, there was a contract, and the trial court in a
breach of contract action properly excluded from evidence terms and
conditions (including limitation of liability) contained on a
reverse side of invoice later mailed by the seller)(citing
*Tubelite*).  Although the facts in *Enpro* were that the delivery
ticket "accompanied" the steel plates, the court found that the

-31-

acceptance of the shipment occurred before receipt of the ticket and invoice. *Id.* at 879-80. *See also Preston Farm & /ranch Supply, Inc. v. Zyme Enterprises*, 625 S.W. 2d 295, 299, 300 (Tex. 1982)(noting that "[c]ourts and scholars have questioned whether [Section 2.207] can apply at all to a sale in which the goods have already been shipped and accepted and a memorandum such as an invoice . . . altering the terms is sent contemporaneously with or subsequent to the shipment of goods" and finding that a monthly statement sent after the goods had been shipped was not an acceptance or written confirmation). *See also Contractor's Source, Inc. v. Hanes Companies, Inc.*, Civ. A. No. 09-CV-0069, 2009 WL 6443116, *7-8 (S.D. Tex. Dec. 29, 2009)(discussing these cases and finding that an invoice constituted neither an acceptance nor a written confirmation within the scope of § 2.207.  Omni's Petition here fails to identify which invoices had the Standard Terms of Sale on the back, and/or whether they arrived contemporaneously with the seals or afterward, and/or whether despite the fact that they were not always included, whether they constituted a course of dealings that made the Standard Terms of Sale part of the alleged agreement.

In *Permian Petroleum Co. v. Pretroleos Mexicanos*, 934 F.2d 635 (5th Cir. 1991), a provision for contract interest was included in the invoices.  There the court determined that under Tex. Bus. & Com. Code § 2.207, as a "written confirmation," the provision

entitling defendant to the interest became part of the parties' contract, as either part of the offer or part of the acceptance, because the seller delivered the goods with the invoices, which were stamped by the defendant upon receipt and the defendant never objected to the invoice interest provision.

Omni argues that the Standard Terms of Sale on the back of several invoices is an "attempted modification" that fails to satisfy the Statute of Frauds.  Tex. Bus. & Com. Code § 2.209(c).  "Modification of a contract is some change in an original agreement which introduces a new or different element into the details of the contract, but leaves its general purpose and effect undisturbed."  *Enserch Corp. v. Rebich*, 925 S.W. 2d 75, 83 (Tex. App.--Tyler 1996, writ dismissed by agreement).  The Texas Supreme Court has opined,

> Parties have the power to modify their contracts.  A modification must satisfy the elements of a contract:  a meeting of the minds supported by consideration.  Whether a contract is modified depends on the parties' intentions and is a question of fact.  The burden of proving modification rests on the party asserting modification.  [citations omitted]

*Hathaway v. General Mills, Inc.*, 711 S.W. 2d 227, 228-29 (Tex. 19896).  To prove modification, a party must show that the other side (1) had notice of the change and (2) accepted the change.  *S.K. Apparel Mfg., Inc. v. City of Houston*, No. 14-01-00554-CV, 2002 WL 1822406, *2 (Tex. App.--Houston [14th Dist.] Aug. 8, 2002), *citing Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W. 3d 341, 349-50 (Tex. App.--Houston [14th Dist.] 2001, pet. denied).

Generally for a valid modification of a contract (1) the modification must be based on new consideration and (2) the same degree of mutuality of minds must exist as was present for the original contract, and all parties to the agreement must assent to the modification. *Hill v. Heritage Resources, Inc.*, 964 S.W. 2d 89, 113-14 (Tex. App.--El Paso 1997, writ denied); *in accord S&D Group, Inc. v. Talamas*, 710 S.W. 2d 680, 683 (Tex. App.-Corpus Christi 1986)(A contract that is modified by mutual consent constitutes a new agreement and takes the place of the original)(and cases cited therein). Under the UCC, Tex. Bus. & Com. Code § 2.209(a), "no showing of consideration for the contract modification is required as long as it is made in good faith." *Enserch Corp.*, 925 S.W. 2d at 83; *see also Allied Chemical Corp. v. DeHaven*, 752 S.W. 2d 155, 159 (Tex. App.--Houston [14th Dist.] 1988, writ denied). The continuing mutual obligations by the parties may furnish sufficient consideration to support a binding modified contract. *Id.* As noted earlier, "an oral modification that would itself form a binding contract in the absence of Statute of Frauds considerations can be binding on the parties to a sale of goods over $500 insofar as specific goods have been received and accepted" under § 2.201(c)(3). *Brookside*, 873 F. Supp. at 1038.

In addition, With respect to the Standard Terms of Sale, which includes  limitations on various warranties, the Petition asserts that it was found on the reverse side of only some invoices sent by

Parker to Omni, in diminutive (non-conspicuous) print (see Exhibit A to Original Petition).   Implied warranties[13] can be expressly disclaimed, but the disclaimer must be in writing and conspicuous. Tex. Bus. & Com. Code §§ 2.314, 2.315.   Whether a disclaimer is conspicuous is a question of law for the court.   Tex. Bus. & Com. Code § 1.201(b)(10).   A term is conspicuous if it is written so that a reasonable person against whom it is to operate should have noticed it.   *Id.; The Hartford v. Lyndon-DFS Warranty Services, Inc.*, No. 01-08-00398-CV, 2010 WL 2220443, *11 (Tex. App.--Houston [1st Dist.] May 28, 2010). For example, language in the body of a document can be conspicuous if it is set off from the surrounding text by symbols or marks that draw attention to it or in larger type than the surrounding text or in contrasting type, font, or color.   *Id.; id.*   A disclaimer of the implied warranty of merchantability must be conspicuous and state the word "merchantability." *The Hartford*, 2010 WL 2220443, *11, citing Tex.

---

[13] "To prevail in a claim of breach of implied warranty of merchantability, a plaintiff must show as follows: (1) that the merchant sold goods to the plaintiff; (2) that the goods were unmerchantable, that is, unfit for ordinary purposes; (3) that the plaintiff notified the defendant of the breach; and (4) that the plaintiff suffered injury." *The Hartford v. Lyndon-DFS Warranty Services, Inc.*, No. 01-08-00398-CV, 2010 WL 2220443, *11 (Tex. App.--Houston [1st Dist.] May 28, 2010), citing Tex. Bus. & Com. Code § 2.314, cmt. 3 and various Texas case.   To prevail on a claim for breach of implied warranty for a particular purpose, the plaintiff must show that "(1) the seller had reason to know any particular purpose for which the goods were required at the time of contracting and (2) the buyer was relying on the seller's skill or judgment to select or furnish suitable goods." *Id.*, citing Tex. Bus. & Com. Code § 2.315.

Bus. & Com. Code § 2.316(b).  Language excluding an implied warranty of fitness for a particular purpose must be in writing and conspicuous.  *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W. 3d 813, 828 (Tex. App.––Fort Worth 2008).  If inconspicuous, the disclaimer is ineffective.  *Id.* 829.

Sections 4 and 5, addressing warranties and imposing limitations on them, are on the back side of an occasional invoice, with apparently no reference on the front of those invoices, are mostly in uppercase letters, in contrast to the other eleven sections, but all sections of the Standard Terms of Sale are quite small in size, none in bolder print than the others, and difficult to read.

"If a contract contains a provision making the contract or any conflict arising under the contracts subject to another state's laws, . . . that provision must be set out conspicuously in print, type, or other form of writing that is boldfaced, capitalized, underlined, or otherwise set out in such a manner that a reasonable person against whom the provision may operate would notice the provision."  Section 13 of the Standard Terms of Sale, addressing the choice of Ohio law, is not conspicuous:  it is in small print of the same intensity as the rest of the document, is the very last section, and is not set off by anything to suggest it is important.  That the Standard Terms of Sale appeared inconsistently on only some invoices, Omni's insistence that it did not assent to those

terms, and questions relating to conspicuousness raise substantial questions  there was a valid modification here, but Parker is free to raise the issue.

Until these issues regarding the relationship of the Standard Terms of Sale to the parties' performance contract are adequately pleaded and ultimately resolved, the applicability of those terms to the parties' dispute cannot be determined.  Moreover, before the Court would rule on such matters, it would require more information as indicated *supra* and a clearer copy of the Standard Terms of Sale.

The court otherwise addresses the arguments in the order they were made by Parker's motion to dismiss.

First, it agrees with Parker, as indicated *supra* in its Standards of Review section, that Omni's claims for common law fraud,[14] the DTPA,[15] fraudulent inducement,[16] fraudulent concealment[17]

---

[14] To plead fraud under Texas law, moreover, a plaintiff must allege, with supporting facts giving rise to a plausible claim, (1) a material misrepresentation; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.  *In re FirstMerit Bank*, 52 S.W. 3d 749, 758 (Tex. 2000).

[15] The DTPA gives consumers a cause of action for a defendant's false, misleading, or deceptive acts or practices.  Tex. Bus. & Com. Code § 17.50(a)91).  To state a claim under the DTPA a plaintiff must allege that (1) plaintiff is a consumer, (2) defendant engaged in false, misleading or deceptive acts, and (3) these acts constitute a producing cause of the consumer's damages. *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W. 2d 472, 478

(Tex. 1985).  To be a "consumer" under the Act, the plaintiff must be "an individual . . . who seeks or acquires by purchase or lease, any goods or services . . . ."  Tex. Bus. & Com. Code § 17.45(4).  Whether a party is a consumer is a question of law. *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. supp. 2d 842, 854 (N.D. Tex. 2006).  To state a claim under the DTPA, "the goods or services purchased or leased must form the basis of the complaint." *ShermanSimon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W. 2d 13, 15 (Tex. 1987).

[16] Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract, and the elements of fraud must be established as they relate to the agreement between the parties." *Haase v. Glazner*, 62 S.W. 3d 795, 798-99 (Tex. 2001). Thus to state a claim for fraudulent inducement a plaintiff must allege that a false material misrepresentation was made that (1) was either known to be false when made or was asserted without knowledge of the truth, (2) was intended to be relied upon, (3) was relied upon, and (4) caused injury.  *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W. 2d 41, 47 (Tex. 1998).  "Failing to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent."  *In re Int'l Profit Assocs., Inc.*, 274 S.W. 3d 672, 678 (Tex. 2009), *citing Bradford v. Vento*, 48 S.W. 3d 749, 755 (Tex. 2001).  Whether a duty to speak exists is a question of law.  *Bradford*, 48 S.W. 3d at 755.  A contractual promise made with no intention of performing, indeed with an intent to deceive, may give rise to a fraudulent inducement claim.  *Tony Gullo Motors I, LP v. Chapa*, 212 S.W. 3d 299, 304 (Tex. 2006); *Formosa*, 960 S.W. 2d at 48' *Spoljaric v. Percival Tours, Inc.*, 708 S.W. 2d 432, 434 (Tex. 1986).

[17] For a claim of fraud by nondisclosure or fraud by omission, a plaintiff must show (1) the defendant failed to disclose facts to the plaintiff when the defendant had a duty to disclose such facts; (2) the facts were material; (3) the defendant knew of the facts; (4) the defendant knew that the plaintiff was ignorant of the facts and did not have an equal opportunity to discover the truth; (5) the defendant was deliberately silent and failed to disclose the facts with the intent to induce the plaintiff to take some action; and (6) the plaintiff suffered injury as a result of acting without knowledge of the undisclosed facts.  *Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W. 3d 840, 850 (Tex. App.--Houston [14th Dist.] 2010, no pet.).  Plaintiff must also show that he relied on the omission or concealment.  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W. 2d 171, 181 (Tex. 1997).  As indicated above, on a

and negligent misrepresentation[18] are based on the same allegations of fraud and are thus subject not only to the plausible claim standard of Rules 8 and 12(b)(6), requiring sufficient facts to support the elements of each claim, but to the heightened pleading requirements of Rule 9(b), specifically identifying who made the false representation, what was said, when, where, and how it was fraudulent, as set out in the Standards of Review section of this Opinion and Order.  Omni has clearly not satisfied the standard under either Rules 12(b)(6) or 9(b).

---

fraudulent nondisclosure claim, the plaintiff must show that the defendant owed a duty to speak or disclose information.  *Bradford v. Vento*, 48 S.W. 3d at 755; *Spoljaric*, 708 S.W. 2d at 435 ("When the particular circumstances impose on a person a duty to speak and he deliberately remains silent, his silence is equivalent to a false representation.").

[18] To state a claim for negligent misrepresentation a plaintiff must assert (1) that the representation was made by a defendant in the course of his business or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered a pecuniary loss by justifiably relying on the representation.  *Biggers v. BAC Home Loans Servicing, L.P.*, ___ F. Supp. 2d ___, No. 3:10-CV-1182-D, 2011 WL 588059, *7-8 (N.D. Tex. Feb. 10, 2011), *citing Fed. Land Bank Ass'n v. Sloane*, 825 S.W. 2d 439, 442 (Tex. 1991)(approving definition in *Restatement (Second) of Torts* § 552B (1977)).  Rule 9(b) can apply to a claim for negligent misrepresentation where the fraud and negligent misrepresentation claims are sufficiently intertwined, where the allegations of both are not clearly separate, and where a simple redaction cannot remove allegations of fraud so that a valid and intelligible negligent misrepresentation claim remains intact. *Lone Star*, 594 F. Supp. 2d at 387 n.3.; *Biliouris*, 559 F. Supp. 2d at 737; *In re Enron Corp. Securities, Derivative* & *"ERISA" Litig.*, 540 F. Supp. 2d 843, 827 (S.D. Tex. 2007).

Moreover the Court also concurs with Parker that its representative Lovett's statement that Parker could design and manufacture seals that met or exceeded the quality of its competitors is not a representation of material fact, but an opinion, or mere puffing, and is not actionable as a matter of law under both Ohio and Texas law. *Autohaus*, 794 S.W. 2d at 464 ("Generally, statements that compare one product to another and claim superiority [such as the Mercedes automobile is the best engineered car in the world] are not actionable misrepresentations."). So, too, are Parker's website claims that Parker is the "world's leading diversified manufacturer of motion and control technologies and systems, providing precision-engineered solutions for a wide variety of mobile, industrial and aerospace markets," that "Parker seals can handle the most challenging applications known to man," and that "Parker EPS Division is more than a seal manufacturer--we work with you to solve problems--allowing you to get your products to market quickly and safely." *Autohaus*, 794 S.W. 2d at 462 ("One consideration in determining whether a statement is puffing or opinion is the specificity of the statement. Imprecise or vague representations constitute mere opinions.").

In *Holland* the court explained what is established law in Texas,

> Whether a statement is an actionable statement of "fact" or merely one of "opinion" often depends on the

circumstances in which a statement is made.  Among the relevant circumstances are the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and listener's knowledge, and whether the statement relates to the present or the future.

2011 WL 3157148, *7, *citing inter alia Trenholm*, 646 S.W. 2d at 930.
An opinion may even be actionable if (1) it is "intertwined" with direct representations of present facts"; (2) "the speaker had knowledge of its falsity"; (3) it is based on past or present facts"; or (4) the speaker has "special knowledge of facts that will occur or exist in the future." *Trenholm*, 646 S.W. 2d at 930-31.  Omni fails to provide any such details about the context of the fraudulent representations it alleges.

The Court has indicated where Omni's Petition fails to state a claim or provides insufficient information to determine whether it has a viable claim.

Because the Court finds no "undue delay, bad faith or dilatory motive on the part of [Omni], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment" under Federal Rule of Civil Procedure 15(a) here, the Court

ORDERS that Parker's motion for more definite statement (#2) is GRANTED and Omni is GRANTED LEAVE to file an amended complaint within twenty days of entry of this order.  Parker shall file a timely response.  Parker's motion to dismiss (#2) is MOOT.

-41-

**SIGNED** at Houston, Texas, this  28th  day of  June , 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE