IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OMNI USA, INC., | § | |
|     Plaintiff | § | |
| v. | § | CIVIL ACTION NO. 10-4728 |
| | § | |
| PARKER-HANNIFIN | § | |
| CORPORATION, | § | |
|     Defendant | § | |

**DEFENDANT PARKER-HANNIFIN CORPORATION'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Parker-Hannifin Corporation ("Parker") files this Motion for Partial Summary Judgment that Plaintiff take nothing by reason of its claims against Defendant, and that Defendant retain its Counterclaim, and would show the Court as follows.

**I. SUMMARY**

1. At times from 2005 through 2007, Parker sold seals to Omni which Omni installed as component parts in its gearboxes. Omni, in turn, sold its gearboxes to another manufacturer which used them as part of large mobile irrigation systems which it manufactured.

2. On October 13, 2010, Omni USA, Inc. ("Omni") sued Parker alleging that Parker sold it "defective" seals that led to leaks in gearboxes Omni manufactured and had sold to TL Irrigation. (Ex. A, Omni's First Amended Complaint). Omni's whole case rests on whether the subject seals had a defect that caused them to leak. Because the Summary Judgment evidence establishes that the seals were not defective, and Omni cannot produce any Summary Judgment evidence of a defect in Parker seals which caused the leaks complained of by TL Irrigation, there is no genuine issue of fact as to this essential element of Plaintiff's claims, and Parker is entitled to Judgment against Omni's claims as a matter of law.

HOULITIGATION:1285946.1

## II. SUMMARY JUDGMENT EVIDENCE

3. Parker attaches the following exhibits as summary judgment evidence, which are incorporated for purposes of this motion, by reference, as if fully set forth herein:

4. **Exhibit A**: Omni's First Amended Complaint

5. **Exhibit B**: Jeffrey K. Daniel deposition transcript excerpts. Jeffrey Daniel is the President of Omni. (Ex B, Jeff Daniel depo, p. 51).

6. **Exhibit C**: Quote produced by Omni in discovery, Bates numbered Omni.007.1118-24.

7. **Exhibit D**: David A. Kemper deposition transcript excerpts. David Kemper is the Technical Support Manager of Omni. (Ex. D, Kemper depo, p. 14). Kemper was also designated as corporate representative of Omni. (Ex. H, Hatch depo, p. 8).

8. **Exhibit E**: Daniel Lloyd Matthews deposition transcript excerpts. Daniel Matthews is the Operations Manager of Omni. (Ex. E, Matthews depo, pp. 38-39). Matthews was also designated as corporate representative of Omni. (Ex. H, Hatch depo, p. 8).

9. **Exhibit F**: Merle Lynn Bell deposition transcript excerpts. Merle "Mark" Bell, P. E. is Omni's expert witness. (Ex. F, Bell depo, pp. 5-6).

10. **Exhibit G**: Timothy B. Hatch's expert report and declaration. Mr. Hatch is Parker's expert witness.

11. **Exhibit H**: Timothy Brian Hatch, P.E. deposition transcript excerpts.

12. **Exhibit I**: Doug Soderquist deposition transcript excerpts. Doug Soderquist is the engineering manager of T-L Irrigation. (Ex. I, Soderquist depo, p. 8).

13. **Exhibit J**: Email chain between Parker and Omni, Bates numbered PARKER_0000227-243.

14. **Exhibit K**: Merle Lynn Bell's expert report.

### III. FACTS

15. In early 2004, Omni approached Parker[1] and requested that Parker provide a quote for a "cartridge" seal that could be used in Omni's agricultural gearboxes. (Ex. B, Jeff Daniel depo, pp. 114-20). Parker sent Omni a quote on May 21, 2004. (Ex. C, Quote Bates numbered Omni.007.1118 – 24). Parker made a substantially identical drawing of the sample provided by Omni, and that drawing was approved by Omni. (Ex. D, Kemper depo, pp. 34-37 & Ex. 15). After Omni approved the drawing, Omni tested the seals for fit and installation by installing samples and performing a pressure tests. (Ex. D, Kemper depo, pp. 36-37).

16. Omni agrees through its designated corporate representatives, Mr. Matthews and Mr. Kemper, that it was Omni's responsibility to install the seals and to ensure that they were installed correctly. (Ex. D, Kemper depo, pp. 28-29, Ex. E, Matthews depo, pp. 105-12). They confirmed that the seals were capable of being properly installed. (Ex. D, Kemper depo, pp. 33 & Ex. 2; Ex. E, Matthews depo, pp. 75-76 & Ex. 2). In fact, every gearbox was tested prior to it leaving Omni's manufacturing sites. (Ex. D, Kemper depo, pp. 17-18, 29-30).

17. In the Fall of 2007, complaints were first made of Omni gearboxes leaking in the area of the seals. The complaints were from an Omni customer, TL Irrigation. These complaints involved gearboxes sold and shipped by Omni to TL in 2005. (Ex. D, Kemper depo, pp. 31-33 & Ex. 9; Ex. E, Matthews depo, pp. 116-20 & Ex. 9).

18. Thereafter no "root cause analysis" was performed to determine the cause of the leaking complaint. (Ex. B, Jeff Daniel depo, pp. 207-14; Ex. E, Matthews depo, pp. 113-115).

---

[1] Omni actually approached JM Clipper Corp. (a/k/a JMC), which was a subsequently acquired by Parker. For the sake of consistency, "Parker" will be used for JM Clipper and Parker Hannifin.

The limited testing that was done was not able to duplicate leaking, or determine its cause. (Ex. B, Jeff Daniel depo 207-14, 262; Ex. E, Matthews depo, pp. 122-24 & Ex. 10).

19. To this date, there has been no evidence whatsoever presented identifying any defect in any Parker seal that was an alleged cause of the leakage complained of. The evidence shows only that improper installation of seals by Omni may have been the reason for the gearbox's leaking.

20. When asked in his deposition (on October 23, 2012) whether he was "aware of any defects with the Parker or JM Clipper seals," Omni Corporate Representative David Kemper responded: "Aware of any defects? No." (Ex. D, Kemper depo, pp. 30).

21. Other than vaguely hearing something about some crimping issue with seals manufactured in 2007 (not those used in the 2005 Omni Gearboxes that were the subject of the customer complaints), the other Omni Corporate Representative, Daniel Matthews, testified in his deposition (taken on October 23, 2012) that he did not know of any defect with the Parker seals. (Ex. E, Matthews depo, pp. 116-21, 125-26 & Ex. 9).

22. Jeff Daniel, Omni's President, could not identify a defect, responding only that tests could not be performed to determine the defect and that he "could not recall" and "did not know" of any testing. (Ex. B, Daniel depo, pp. 207-14). Jeff Daniel testified that no testing was performed to determine whether there was a defect in the Parker seals – either design or manufacturing. (Ex. B, Daniel depo, pp. 207-14).

23. Closing the loop, Omni's engineering and seal expert for purposes of this suit, Merle "Mark" Lynn Bell, did not identify a defect in the Parker seals, and all evidence points to improper installation as a possible cause of the leaking gearboxes. Bell's testimony is discussed in more detail below.

## IV. SUMMARY JUDGMENT STANDARDS

24. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A defendant may satisfy its summary judgment burden in one of two ways. One way a defendant may satisfy its burden is to submit summary judgment evidence that negates the existence of an essential element of the plaintiff's claim. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A defendant may also satisfy its burden by showing that there is no evidence to support an essential element of the plaintiff's claim. *Celotex Corp.*, 477 U.S. at 325. If the defendant shows there is no evidence to support an essential element of the plaintiff's claim, it is not necessary for the defendant to introduce evidence that negates the plaintiff's claim. *Celotex Corp.*, 477 U.S. at 323; *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

## V. ARGUMENT

### A. Plaintiff's Causes of Action and Elements

25. On March 27, 2012, the Court entered its Opinion and Order of Partial Dismissal (Doc. 26). The Court dismissed Omni's claims for fraud, fraudulent inducement, negligent misrepresentation, and violations of the DTPA. The only claims remaining are Omni's claims for breach of contract and breach of implied and express warranties. (Doc. 26, pp. 19-20).

26. The elements for a breach of contract action are: (1) the existence of a valid enforceable contract; (2) the plaintiff performed, tendered performance of, or was excused from performing its contractual obligations; (3) the defendant breached the contract; and (4) the defendant's breach caused the plaintiff's injury. *B&W Sp. v. Beckman*, 305 S.W.3d 10, 16 (Tex.

App.—Houston [1st Dist.] 2009, pet. denied). In order for Omni to prevail on its breach of contract claim, it will have to prove that Parker breached a contract and caused Omni's injury. Specifically, Omni needs to prove that its injury was a natural probable and foreseeable consequence of Parker's breach. *Mead v. Johnson Group*, 615 S.W.2d 685, 687 (Tex. 1981). Omni contends that Parker breached a contract by failing to provide non-defective seals. (Ex. A, First Am. Complaint ¶ 27).

27. Omni claims that Parker breached express warranties "with respect to the seals sold to Plaintiff by selling same in a defective condition likely to cause leakage and product malfunction that did occur." (Ex. A, First Am. Complaint ¶ 19). Omni's claim for breach of express warranty requires Omni to establish that the seals did not comply with Parker's alleged representation regarding the character, quality, or title promised at the time of sale. *Chilton Ins. Co. v. Pate & Pate Enters.*, 930 S.W.2d 877, 891 (Tex. App.—San Antonio 1996, writ denied).

28. Omni alleges that Parker breached implied warranties of merchantability and fitness for a particular purpose "by selling such seals to Plaintiff in a defective condition likely to cause the leakage and product malfunction that did occur." (Ex. A, First Am. Complaint, ¶ 24).

29. Therefore, all of Omni's claims (breach of contract, breach of express warranties, and breach of implied warranties) require that Omni prove that there is a defect in Parker's seals.[2] Omni cannot do so.

---

[2] Parker does not agree that the warranties (express or implied) contended by Omni were made. Parker provided a written limited warranty (modified by an agreement that Parker made no warranty of service life for the seals) which was for a term that expired before the first leak complaint, and which disclaimed all warranties of fitness or merchantability, disclaimed any liability for incidental or consequential damages, and limited Omni's remedy to repair or replacement if a Parker seal was found to be defective. For purposes of this Motion we assume, *arguendo*, the "warranties" claimed by Omni could apply, and because, to start with, no defect is identified or exists at all, it is unnecessary to address any dispute over the warranty terms and limitations.

### B. Omni's Witnesses Indentify No Defect

30. As described in the Facts section above, none of Omni's Corporate Representatives who were in a position to know of, and identify, any alleged defect in the Parker seals could identify any defect in them.[3] Indeed, the evidence points to improper seal installation by Omni.

### C. Omni's Expert Identifies No Defect

31. Plaintiff's expert reports were originally due on November 1, 2011. After going through several experts and filing three motions for more time, Plaintiff's expert deadline was ultimately continued for ten months to September 6, 2012. On September 6, 2012, Omni served its expert report of Mark Bell, who is a mechanical engineer with EPS, Inc. (Ex. K, Engineering Report of Bell). Bell set up a test where he ran two gearboxes, one containing seven-year old Parker seals (Gearbox A) and one containing new seals from Omni's current supplier (Gearbox B). Bell's deposition was taken on September 26, 2012.

32. Gearbox A began to leak after running for about three hours. (Ex. F, Bell depo, p. 48). After disassembling Gearbox A, Bell noted that the seal was cocked .044 inches (not seated flush in its seat in the gearbox). (Ex. F, Bell depo, p. 51). Bell did not determine the cause of the leak, only that the leak had to be coming from in the seal or under the seal, but not between the metal housing and the outer diameter (OD) of the seal. (Ex. F, Bell depo, p. 52). Bell testified that it was possible that the leak was coming from between the shaft and the seal inner diameter

---

[3] Moreover, as shown elsewhere in this motion, Omni not only cannot identify a defect, even if they could, they cannot show some such "defect" was a cause of any leakage complained of, and Omni never ruled out improper installation of the seals by Omni as the cause. Beyond this (but unnecessary to, and not part of, this Motion at this time), Omni and TL made no effort to determine, and cannot say, of the numerous gearboxes sold, which ones leaked. (Ex. I, Soderquist depo, pp. 143-145). This is interesting since Omni used at least 3000 seals supplied by another vendor (not Parker) in the subject gearboxes. (Ex. J, PARKER_000232).

(ID) and that it was possible the leakage occurred because the seal was cocked. (Ex. F, Bell depo, pp. 51-53).

33. The seal in Gearbox A was cocked to a degree that was seven times outside of the accepted standards. (Ex. F, Bell depo, p. 55-56). According to Bell, the seal was not properly installed. (Ex. F, Bell depo, p. 56). Bell testified that seals with rubber ODs are common. (Ex. F, Bell depo, p. 60). Bell was not aware that the Gearbox A and the seal inside Gearbox A were seven years old. (Ex. F, Bell depo, p. 56-57). He was not aware that Omni had been instructed to install the seals with a seal installation tool and to use plenty of lubrication. (Ex. F, Bell depo, p. 61).

34. Bell admitted that he was not able to determine whether the Parker seal was inferior because the characteristics, age and installation of the seals were not the same. (Ex. F, Bell depo, p. 73).

35. Bell admitted that he did not find Parker's seal to be inferior. (Ex. F, Bell depo, p. 76-77). Bell testified as follows:

> Q. And now that you're informed that the seal that you tested was, A, seven years old and, B, cocked, improperly installed, then would it be fair to say that we really don't know based upon your test whether there's any superiority or inferiority between either of the designs?
>
> A. That's correct.

(Ex. F, Bell depo, p. 77).

36. Indeed, much to Bell's surprise, Omni never performed a "root cause analysis" to determine why the gearboxes were leaking. (Ex. F, Bell depo, p. 79-83).

37. The only testing that was performed after the gearboxes started leaking showed no defects in the Parker seals. In an email between Omni and T-L, they recognized this, stating: "We have not had any instances of Parker seals not passing leak testing." (Ex.F, Bell depo, p. 85

& depo Ex. G). Bell testified that this information (positive data that shows an inability to duplicate leaking) would be useful in performing a root cause analysis.

38. Additionally, Bell confirmed that additional data from the case indicates that the problem with the leaking gearboxes was not due to the design of the seals. The customer that complained of leaking gearboxes and recalled them, T-L Irrigation, issued a service bulletin dated January 2009 which states that in TL's experience, if a gearbox was not already leaking leaks were not expected to develop. (Ex. F, Bell depo, pp. 86-88 & depo Ex. H). Mr. Bell testified that, from an engineering perspective, this evidence showed that the leaking was likely not due to a defect in the seal. (Ex. F, Bell depo, p. 88).

39. Bell also testified that the cause of the leakage was not due to any alleged change in design of the seal. (Ex. F, Bell depo, pp. 98-99). And he confirmed that he had not concluded that the rubber coating on the Parker seal was a contributing factor to the leakage. (Ex. F, Bell depo, pp. 103-05).

40. Bell did not rule out the age of the seal he tested as being a potential cause of leakage. (Ex. F, Bell depo pp. 106-07).

41. Bell did not rule out the improper installation by Omni, as being a potential cause of leakage. (Ex. F, Bell depo pp. 106-07).

42. Bell did not rule out Omni's change in gearbox specifications, as being a potential cause of leakage. (Ex. F, Bell depo pp. 106-07).[4]

---

[4] Because of the testimony of Plaintiff's Corporate Representatives and Plaintiff's expert, Defendant need bring forward no additional proof. However, the conclusion of Parker's expert witness, Timothy Hatch, is consistent with the above noted testimony. He concluded improper installation explains any leakage. (Ex. H, Hatch depo, pp. 99-100; Ex. G, declaration of Tim Hatch & report, pp. 5-6. and Hatch depo, pp. 61-63).

## VI. CONCLUSION & PRAYER

43. For Omni to prevail on its claims, it must show that the seals in the leaking gearboxes were defective. There is no evidence of any defect. Every Omni representative testified that they could not identify a defect. Omni's expert could not identify a defect. Indeed, all evidence points to improper installation of the seals as the cause of any leakage.

44. Because Omni cannot establish that the seals were defective, and that any allegedly defective seals caused any leakage, Parker is entitled to Summary Judgment on Omni's claims. Parker respectfully requests that the Court dismiss all of Omni's remaining claims with prejudice, retaining Parker's Counterclaim for unpaid invoices and attorney's fees, and grant Parker all other relief to which it is justly entitled.

Respectfully submitted,

MEHAFFYWEBER, P.C.

*/s/ Jeremy R. Stone*
Jeremy R. Stone
Attorney-in-charge
State Bar No. 24013577
S.D. Texas I.D. No. 27060
500 Dallas, Suite 1200
Houston, Texas 77002
Phone: (713) 655-1200
Fax: (713) 655-0222
ATTORNEY FOR DEFENDANT PARKER-HANNIFIN COPRPORATION

Of counsel:

**MEHAFFY WEBER, P.C.**

Louis M. Scofield, Jr.
State Bar No. 17884500
Post Office Box 16
Beaumont, Texas  77704
Telephone: 409/835-5011
Telecopier: 409/835-5177

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served via the Court's Electronic Filing System on November 12, 2012.

*/s/ Jeremy R. Stone*
JEREMY R. STONE

Mr. Daniel A. Ruiz
Law Office of Daniel A. Ruiz
1795 N. Fry Rd., Suite 305
Katy, Texas 77449