IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

OMNI USA, INC.,                        §
                                       §
                   Plaintiff,          §
                                       §
VS.                                    §   CIVIL ACTION H-10-4728
                                       §
PARKER-HANNIFIN CORPORATION,           §
                                       §
                   Defendant.          §

## OPINION AND ORDER

Pursuant before the Court in the above referenced cause is Defendant Parker-Hannifin Corporation's ("Parker-Hannifin's") opposed, first amended motion for attorney fees in the amount of $7,512.50, relating to its successful breach of contract counterclaim, and apparently otherwise unopposed motion for entry of final judgment (instrument #74). Attached to the motion are attorney Jeremy R. Stone's Declaration, Stone's and attorney Louis M. Scofield's resumes in support (Exs. A, 1 and 2), their billing records relating to the breach of contract counterclaim (Ex. C), and a proposed final judgment (Ex. B).

Initially Parker-Hannifin asked for fees in the amount of $110,101.40. In its Opinion and Order of August 8, 2012 (#71),[1] the Court ordered Parker-Hannifin to file an amended request with supporting documentation pursuant to Texas Civil Practice and

---

[1] Also available as *Omni USA, Inc. v. Parker-Hannifin Corporation*, ___ F. Supp. 2d ___, Civ. A. No. H-10-4728, 2013 WL 4063007 (S.D. Tex. Aug. 8, 2013).

Remedies Code § 38.001(8)("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."), the lodestar method, and *Johnson v. Georgia Highway Express*, 488 F.2d 714, 171-19 (5th Cir. 1974), limited to legal services for its breach of contract counterclaim under Chapter 2 of the Texas Business and Commerce Code (UCC), upon which it prevailed and for which it recovered $15,233.00.  Parker-Hannifin has done so in the pending motion.

### Relevant Law

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate," a sum commonly called the "lodestar." *Blum v. Stenson*, 465 U.S. 886, 888 (1984).  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

A reasonable hourly rate is that rate in the community for such legal services rendered by attorneys of comparable skill, experience, and reputation. *Alberti v. Klevenhagen*, 896 F.2d 927, 936*, vacated in part on other grounds*, 903 F.2d 352 (5th Cir. 1990); *Heidtman v. County of El Paso*, 171 F.3d 1039, 1043 (5th Cir. 1999). A reasonable hourly rate should be in accord with rates "prevailing

in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).   "While the hourly rate must be 'adequate to attract competent counsel,' the 'measure is not the rates which lions at the bar may command.'" *Coleman v. Houston Independent School District*, 202 F.3d 264 (5th Cir. 1999)(Table)(available on Westlaw), *citing Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990); *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000).   Furthermore, the relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere. *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir. 2002), *abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).   The fee applicant bears the burden of producing evidence that the requested rate is appropriate within the relevant community. *Condon v. Hunting Energy Services, L.P.*, Civ. A. No. H-04-3411, 2006 WL 2882857, at *2 (S.D. Tex. Oct. 4, 2006).   Usually the fee applicant establishes the community's reasonable rate through the affidavits of other attorneys of similar caliber practicing there. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *Watkins v. Fordice,* 7 F.3d 453, 458 (5th Cir. 1993).

In addition to the community rate, the district court must also consider the attorneys' regular rates. *Louisiana Power &*

*Light Co.*, 50 F.3d at 328.  Generally when an attorney's requested hourly rate is his customary rate, when it is within the range of prevailing market rates, and when the rate is not contested, it is viewed as *prima facie* reasonable.  *Id.*, 50 F.3d at 329.  To establish the reasonableness of his requested rate, the fee applicant should produce satisfactory evidence beyond his own affidavit "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11.  Furthermore, the court may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees.  *Davis v. Bd. of Sch. Comm'rs of Mobil County*, 526 F.2d 865, 868 (5th Cir. 1976).

The court must determine whether the hours expended by the prevailing party's counsel were "reasonably expended," both as to the total number of hours claimed and the specific hours claimed. *Condon*, 2006 WL 2882857, at *2, *citing Louisiana Power & Light Co.*, 50 F.3d at 329.  The fee applicant bears the burden of showing that the hours claimed were reasonably expended.  *Hensley*, 461 U.S. at 437.  Compensable hours, reasonably spent, are determined from the attorney's contemporaneous time or billing records or other documentation which the district court must examine and discern which hours are compensable and which are not.  *Hensley*, 461 U.S. at 434; *Louisiana Power & Light*, 50 F.3d at 324.

The fee applicant should exercise "billing judgment" and keep billing time records in a way that enables the reviewing court can "identify distinct claims." *Hensley*, 461 U.S. at 437. *See also Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010)*(An applicant for fees must submit documentation, e.g., contemporaneous billing records or detailed invoices or affidavits, to permit the court to identify noncompensable hours and to determine an appropriate amount of fees.).* Counsel must "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Id. See also Saizan v. Delta Concrete Products Company*, 448 F.3d 795, 799 (5th Cir. 2006)("[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. [footnotes omitted]"). *See also Louisiana Power*, 50 F.3d at 324-25 ("[T]he documentation must be sufficient for the court to verify that the applicant has met its burden. . . . [A] district court may reduce the number of hours awarded if the documentation is *vague* or *incomplete*. . . . Failing

-5-

to provide contemporaneous billing statements does not preclude an award of fees per se as long as the evidence produced is adequate to determine reasonable hours."); *Saizan*, 488 F.3d at 799, 800 (billing judgment requires documentation of the hours charged and of the hours written off as duplicative, unproductive or excessive; finding the district court did not commit clear error in finding a failure to produce evidence of billing judgment nor abuse its discretion by imposing a ten percent reduction in the lodestar because of that failure).   "Litigants take their chances when submitting fee applications" without adequate information for the court to determine the reasonableness of the hours expended or with vaguely described tasks such as "review pleadings," "correspondence," or documents. *Louisiana Power*, 50 F.3d at 327. The "'contemporaneously created time records [should] specify, for each attorney, the date, the hours expended, and the nature of the work done.'" *Hilton v. Executive Self Storage Associates*, Civ. A. No. H-06-2744, 2009 WL 1750121 at *10 (S.D. Tex. June 18, 2009), *quoting Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).   When there is no evidence of billing judgment, the appropriate remedy is to reduce the hours awarded by a percentage intended to replace the exercise of billing judgment. *Walker v. U.S. Dep't of Housing and Urban Development*, 99 F.3d 761, 770 (5th Cir. 1996), *citing Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987)(reducing award by 13%).   *See also Saizan*, 448 F.3d at

799-800 & n.25 (affirming district court's 10% reduction for lack of evidence of billing judgment); *Hopwood*, 236 F.3d at 279 (25% reduction for lack of billing judgment and vague and duplicative work); *Johnson-Richardson v. Tangipahoa Parish School Bd.*, Civ. A. No. 12-0140, 2013 WL 5671165, at *4 (E.D. La. Oct. 15, 2013)(30% reduction for block billing[2]), *citing Verizon Business Global LLC v. Hagan*, No. 07-0415, 2010 WL 5056021, at *5 (E.D. La. Oct. 22, 2010)(citing cases showing that reductions for block billing between 15% and 35% have been found reasonable), *vacated on other grounds*, 467 Fed. Appx. 312, 2012 WL 1414448 (5th Cir. Apr. 24, 2012).

In determining what is a reasonable fee, the courts in the Fifth Circuit must consider the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),

---

[2] "'Block billing' is a 'time-keeping method by which each lawyer and legal assistant enters the total daily time working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers and Pipefitters Nat. Pension Fund*, 2011 WL 487754, at *4 (N.D. Feb. 11. 2011), *quoting Glass v. U.S.*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004). *See also Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 864-65 (S.D. Tex. 2011)(A block-billed entry "lists the tasks performed during that period, giving some detail about the kinds of work performed on a particular day, but does not itemize the amount of time spent on each."). Block billing can impede the court's ability to determine whether the amount of time spent on the different tasks is reasonable and some courts have reduced the hours block billed across the board. *Davis v. Perry*, ___ F. Supp. 2d ___, Nos. SA-11-CA-788-OLG, etc., 2014 WL 106990, at *19 (W.D. Tex. Jan. 8, 2014); *Miller v. Raytheon Co.*, 2013 WL 6838302, at *10 (N.D. Tex. Dec. 27, 2013)(and cases cited therein). A reduction for block billing is not automatic. *Id.; id.*

*abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989)(holding that a fee award under § 1988 should not be capped by a contingent fee agreement between the attorney and his client). The twelve *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

The *Johnson* factors are applicable to deciding whether the lodestar is reasonable, as well as to adjusting that award by a multiplier once the lodestar is calculated. *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 536 (5th Cir. 1986)("The time and hours spent on a case are a necessary ingredient in determining a fee award, but they should not be the sole basis for determining a fee. The *Johnson* factors govern the determination of reasonableness itself; they are not merely factors to be considered in adjusting the award once the lodestar is calculated."), *citing Johnson v. Georgia Highway Express*, 488 F.2d at 717. There is a

-8-

strong presumption that the lodestar is a reasonable fee, and the fee applicant bears the burden of demonstrating that an upward adjustment by application of the *Johnson* factors is necessary to calculate a reasonable fee. *Walker v. Dept. of HUD*, 99 F.3d 761, 771 (5th Cir. 1996); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995), *cert denied*, 516 U.S. 862 (1995).

As noted, based on one or more *Johnson* factors, the court may apply a multiplier to adjust the lodestar up or down if that factor or factors are not already taken into account by the lodestar, itself. *Strong*, 137 F.3d at 850. An adjustment may only be made if the *Johnson* factor has not already been accounted for in the lodestar. *In re Fender*, 12 F.3d 480, 487 (5th Cir.), *cert. denied*, 511 U.S. 1143 (1994); *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir.)("[T]he district court must be careful . . . not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments."), *cert. denied*, 510 U.S. 991 (1993).

Four of the *Johnson* factors are presumably included in the lodestar calculation:  the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation. *Blum v. Stenson*, 465 U.S. 886, 898-99 (1984); *Shipes*, 987 F.2d at 320.[3]

---

[3] For example, in *Shipes*, the Fifth Circuit reviewed a district court's enhancement of the "lodestar amount based on the

"Although upward adjustments of the lodestar figure based on these factors are still permissible, such modifications are proper only in certain rare and exceptional cases supported by specific evidence on the record and detailed findings by the lower courts." *Id.; see also Walker*, 99 F.3d at 771, *citing Alberti v. Klevenhagen*, 896 F.2d 927, 936 (*citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air ("Delaware Valley I")*, 478 U.S. 546, 564-65 (1986))(*quoting Blum v. Stenson*, 465 U.S. 886, 898-900 (1984)); *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 323-24 (W.D. Tex. 2007). The Fifth Circuit has also held that two other factors, time limitations imposed by the client or the circumstances and preclusion of other employment, are generally

---

novelty and difficulty of the case because it found that there were over three hundred plaintiffs, an entire spectrum of employment decisions was being challenged, the case was complex and highly technical, and Trinity's obstinate conduct caused additional difficulties." 987 F.2d at 321. The panel opined,

> These factors--not so uncommon in much present-day litigation--simply do not render a case "rare" or "exceptional" for purposes of enhancing the lodestar amount. All counsel competent to handle a case such as this one are expected to be able to deal with complex and technical matters; this expertise is reflected in their regular hourly rate, based on fees for counsel of similar experience and ability. Still further, the difficulty in the handling of the case is adequately reflected in the number of hours billed--hours for which the attorney is compensated in the lodestar amount. Similarly, obstinate conduct by opposite counsel is compensated by the additional number of hours that are required to prevail over such obstinacy.

*Id.*

subsumed in the lodestar calculation, too. *Shipes*, 987 F.3d at 321-22; *Heidtman v. City of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). Increasing the fee award based on the eighth factor (the amount involved and the results obtained) is only proper when the applicant shows that "it is customary in the area for attorneys to charge an additional fee above their hourly rates for an exceptional result . . . ." *Shipes,* 987 F.2d at 322. The *Shipes* panel did state that "enhancement due to the results obtained may be warranted." *Id.* at 321.

To enhance a lodestar, the court "'must explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied.'" *Id., quoting Shipes,* 987 F.2d at 320. "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998), *citing Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990); *Saizan v. Delta Concrete Products Co.*, 448 F.3d at 799.

"The most critical factor in determining an attorney's fee award is the 'degree of success obtained.'" *Singer v. City of Waco, Texas*, 324 F.3d 1038, 829 (5th Cir, 2003), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Saizan*, 448 F.3d at 800 &

n.19.   "This factor is particularly crucial when, as in this case, a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims." *Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998), *citing Hensley*, 461 U.S. at 434.

Where a party is only partially successful on its claims, the court must consider whether the unsuccessful claims were related to the successful claims, i.e., whether they were based on the same facts or legal theories, in other words, "inextricably related.". *Hensley*, 461 U.S. at 434. Where the party is unsuccessful on some of its claims and where the unsuccessful ones have different legal theories and the time spent on them related only to those unsuccessful ones, a reduction in the fee amount is required. *Bertrand v. City of Lake Charles*, No. 2:10-CV-867, 2013 WL 1790089, at *3-4 (W.D. La. Feb. 25, 2013), *report and recommendation adopted*, 2013 WL 1789713 (W.D. La. May 3, 2012).   *See also McDonnell v. Miller Oil Co., Inc.*, 134 F.3d 638, 640 (4th Cir. 1998)("Even when an award of attorneys' fees is mandatory, the district court may decrease the amount of fees that might otherwise be awarded in order to account for the plaintiff's limited success.").

The Supreme Court has acknowledged that "there is no certain method of determining when claims are 'related' or 'unrelated,'" and counsel need not "record in detail how each minute of his time

was expended . . . [b]ut at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. Moreover, "'even where a plaintiff's claims were interrelated, nonfrivolous, and raised in good faith,'" the hourly rate requested may be an excessive amount. *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 801 (5th Cir. 2006), *quoting Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998), *quoting Hensley*, 461 U.S. at 436. "'When the documentation of hours is inadequate for the court to identify those hours spent on prevailing claims which are separate and distinct from other claims, the court may reduce the fee award accordingly." *Bertrand*, 2013 WL 1790089 at *4, *quoting Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990). *In accord, Parton v. GTE North, Inc.*, 971 F.2d 150, 156 (8th Cir. 1992)("A district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

Furthermore, "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted." *Abrams,* 805 F.2d at 535. "[H]ours . . . spent in the passive role of an observer while other attorneys perform" are usually not billable. *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982), *quoted in Coleman*, 202 F.3d at 264 (Table;

available on Westlaw).

The hourly rate for attorneys should not be applied to clerical, secretarial or administrative work, since these are part of office overhead. *Reyes v. Spur Discount Store No. 4*, Civ. A. No. 07-2717, 2007 WL 2571905, *3 & nn.19-20 (E.D. La. Aug. 31, 2007); *Abrams*, 805 F.2d at 536 (court should consider whether the work performed was "'legal work in the strict sense,' or was merely clerical work that happened to be performed by a lawyer."), *quoting Johnson v. Georgia Highway Express*, 488 F.2d at 717. "[I]nvestigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers, but which a lawyer may do because he has no other help available . . . may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Id.* at 535. Work by paralegals may only be recovered to the extent that it is similar to that typically performed by attorneys; otherwise it is an unrecoverable overhead expense. *Coleman*, 202 F.3d 264, *citing Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982).

Where the award of attorney's fees is disproportionate to the amount of damages awarded, that difference by itself does not require a reduction of fees. Proportionality is a factor that may be considered in deciding the reasonableness of a fee request, but proportionality is not necessarily required. *City of Riverside v.*

*Rivera*, 477 U.S. 561 (1986); *Hensley*, 461 U.S. at 436 ("There is no precise rule or formula" for determining the reasonableness of the relation between the fee requested and the relief obtained); *Saizan*, 448 F.3d at 802-03 ("It remains true that there is no *per se* proportionality rule.  However the District Court had ample reason to reduce the fee award, not relying solely on the low settlement amount but also on Plaintiffs' failure to establish billing judgment and inability to prove any element of the case."). *Hernandez v. Hill Country Telephone Co-op., Inc.*, 849 F.2d 139, 144 (5th Cir. 1988)("There is no per se requirement of proportionality in an award of attorney fees under 42 U.S.C. § 1988.); *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 663 (5th Cir. 2002)("The amount of damages a plaintiff recovers is only one of many factors that a court must consider when calculating an award of attorneys' fees.  An attorney's fee award does not need to be commensurate with the actual amount of dollars awarded to the plaintiff."), *overruled on other grounds, Burlington N. v. Santa Fe Ry. v. White*, 548 U.S. 53 (2006).

### Omni's Amended Motion for Attorneys' Fees (#72)

Stone's Declaration in support of Parker-Hannifin's motion requests fees for three lawyers at the firm of Mehaffy Weber; Scofield at $250 per hour; and Stone and another shareholder at the firm of Mehaffy Weber who briefly  worked on the case, Eric Adams, at $225.00 per hour.  Scofield's resume shows that *inter alia* he

was graduated at the top of his undergraduate class from the University of Michigan with highest honors and distinction and as a member of Phi Beta Kappa and from the University of Texas Law School with honors, has been in practice as a defense courtroom lawyer for over 35 years, and has been recognized as a "Texas Super Lawyer" in *Texas Monthly* since 2005. Stone was graduated *cum laude* with a Bachelor of Arts from the University of Houston and received his J.D. from the University of Houston Law Center *cum laude* in 1999. He has been one of *Texas Magazine*'s "Houston's Top Lawyers" since 2008 and been named a "Rising Star" by Texas Monthly from 2006-11. Stone declares that "many lawyers with similar experience" in Houston customarily charge hourly rates of $400-600.

Stone's declaration states,

> 5.  While Parker's breach of contract claim was relatively straight forward in that Omni did not pay for seals it ordered and accepted, Omni alleged that those seals were defective and thus Omni's breach of contract claim and warranty claims were related to Parkers' claim and could have potentially affected Parker's claim. The issue in this case related to seals used in agricultural gearboxes, and required extensive expert analysis. There were numerous extensions related to expert reports, multiple visits to expert facilities to test equipment, and three expert depositions. There were nine depositions in total, one of them taking place in Nebraska. Parker filed numerous motions, including three motions for summary judgment.

> 6.  Attached to this motion as Exhibit 3 are the time entries associated with Parker's counterclaim for breach of contract on which it prevailed. We were conservative in our segregation and did not include many entries for many tasks, which could have been considered integral to the counterclaim, such as drafting discovery, reviewing document productions, depositions and

deposition preparation, and time associated with this amended request.  The descriptions in the time entries accurately describe the tasks, all of which were important, reasonable and necessary for the case and the prosecution of Parker's counterclaim.

7.  We obtained a summary judgment in our clients' favor for the full amount claimed.

In a footnote, counsel for Parker-Hannifin further states in relevant part,

The intertwined fees and expenses on both the Parker claim for damages and defense against Omni's claims were exacerbated equally by the manner in which Omni defended itself.  In this case, the attorneys['] fees mounted in large part because of Omni's conduct, to wit:  Omni's repeated motions for extensions of time; Omni's violations of the Court's scheduling order; Omni's post-deadline designations, deposed a second time; and Omni's tardy briefs.  These facts are supported by the Court's docket sheet and the parties' filings, which are incorporated by reference as if fully set forth herein.

**Plaintiff's Response (#73)**

Supported by an affidavit (Ex. A) from its attorney, Daniel A Ruiz, Omni USA, Inc. ("Omni") objects to the content of the footnote and argues that Parker-Hannifin fails to offer any legal support for its contention that court-approved changes to the scheduling order independently justify increased attorneys' fees relating to the counterclaim.  Ruiz further complains that Parker-Hannifin has not offered any documentation to support its contention that the counterclaim was "intertwined" with its defense against Omni's claims.  He also contends that Parker-Hannifin fails to support its charge that the fees were "exacerbated equally by the manner in which Omni defended itself."

-17-

Ruiz's affidavit asserts that Parker-Hannifin's breach of contract counterclaim is characterized as a suit on sworn account in Texas,[4] which he claims "is considered to be one of the simplest causes of action to assert in the state of Texas" and that it requires "[v]ery little research, if any at all" to draft "a standard complaint" or a motion for summary judgment.  #73, Ex. A at p. 2.  He claims that such suits are "so standardized, clients especially commercial clients, would not normally hire a law firm to prosecute such an action if the firm's attorneys charged a rate of $400-$600 for related services," so Stone's reference to such rates as customary is not relevant here.  *Id.* at pp. 2-3.  Ruiz lists six entries and proclaims them all "unreasonable and unnecessary."  He complains that some fees are not segregated, such as email discussions relating to Omni's warranty,[5] which are not

---

[4] In Omni's Supplemental Response (#75), it explains its characterization of the counterclaim as a suit on a sworn account because there was no formal contract and points out that Ruiz's affidavit did state that it is common to bring such actions with other contract-related claims, so the Response is relevant and applicable.

[5] A party seeking to recover attorney's fees is usually "required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W. 3d 299, 311 (Tex. 2006).  An established exception is "when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." *Id.* In *Chapa*, the Texas Supreme Court refined this concept further.  It ruled that it is not enough to have a common set of underlying facts to make two claims arising from them "inseparable." *Id.* If the fees "would have been incurred on a recoverable claim alone, they

-18-

related to the counterclaim.

### Parker-Hannifin's Reply (#74)

Parker-Hannifin asserts that Omni's response fails to provide an expert witness on the fee request, conclusorily asserts the request is unreasonable without showing why, does not opine what a reasonable and necessary fee for Parker-Hannifin's counterclaim would be, does not consider any of the *Johnson* factors, and simply makes general statements about what he would normally charge for a sworn account petition.

With regard to the footnote in its motion, Parker-Hannifin lists Omni's persistent delays and late submissions, and notes that Omni raised nearly all of its claims as affirmative defenses to the counterclaim. *See* #74 at pp. 3-4.

### Court's Decision

Stone conclusorily asserted that Omni's defense against

---

are not disallowed simply because they do double service." *Id.* at 313. Such would be the case where the claims are so intertwined that the prosecution of each involves basically the same work and proof. *Id.* at 313-14 ("[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated""). A failure to segregate claims does not mean the fee applicant cannot recover any fees; "[u]nsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Id.* at 314.

Counsel may recover fees incurred in "efforts to overcome a defense or to assert a counterclaim when overcoming the defense or proving the counterclaim is necessary to recover on a contract claim." *Preston Exploration Co., LP v. GSP, LLC*, Civ. A. No. H-08-3341, 2013 WL 3229678, at *10 (S.D. Tex. June 25, 2013), *citing Varner v. Cardenas*, 218 S.W. 3d 68, 69 (Tex. 2007).

Parker's counterclaim was imbedded in Omni's breach of contract and breach of warranty claims against Parker-Hannifin and so the fees need not be segregated.   In its Opinion and Order the Court carefully distinguished breach of contract and breach of warranty claims.  It also held that as a matter of law Omni had no breach of contract claim because Parker-Hannifin had delivered the seals and Omni accepted them.  #71 at pp. 5-18, 50, 64-71.  The Court does not find Omni's claims are so intertwined with Parker-Hannifin's counterclaim for breach of contract that segregation of fees is not necessary.

While the Court agrees that many of Omni's tactics delayed this litigation and caused Parker-Hannifin extra legal work, much of it did not relate to its breach-of-contract counterclaim  and does not justify increasing its fees  except where the extra work was on behalf of that breach of contract counterclaim.

As for Omni's objection that the counterclaim was a suit on sworn account, in its Opinion and Order the Court explained that Texas Rule of Civil Procedure 185 is a rule of procedure that does not bind federal courts sitting in diversity jurisdiction and that Parker-Hannifin's summary judgment evidence failed to meet the requirements for such a cause of action.  #71 at pp. 65-67.  It also concluded that Parker-Hannifin did prove a breach of contract counterclaim against Omni under the Texas UCC as a matter of law. *Id.* at pp. 67-71.  The suit on a sworn account and the breach of

contract under the UCC are not so intertwined that fees should not be segregated.

Therefore the Court examines the resumes and billing records to determine what would be reasonable and necessary fees.

As a threshold matter, from its own experience, the Court finds that the hourly rates requested for the three counsel are very reasonable for the Houston region.  Thus the issue becomes which hours are necessary and reasonable.  In general the records set out which attorney billed for what amount for what task.  In addition to breach of contract, Parker-Hannifin asserted counterclaims for suit on a sworn account, unjust enrichment, and quantum meruit, on none of which did it prevail.  Some entries relate to all of the counterclaims or to other claims in the case, e.g., (1) on 7/22/2011, for .5 hours, and on 7/25/2011 for .1 hours Stone emailed Paul Yager regarding counterclaims; (2) on 9/28/2011 Scofield spent .8 hours on matters not related to the counterclaim or on 5/59/2012 for .8 hours Scofield reviewed "our pleadings and counterclaims and prepared a memo about them for Ruiz, an over-inclusive entry.  An entry on 12/12/2012 for Stone for .9 hours was for researching the effect of Omni's filing a late answer to Parker's counterclaims, a matter not reimbursable under § 38.001(8).  Others seem in large part unrelated to the breach of contract counterclaim, e.g., on 11/15/2012 Stone billed $10,080.00 for

> Continued drafting motion for Partial Summary Judgment on
> Parker's Claims for Unpaid Invoices [related to
> counterclaim]; researched prejudgment and postjudgment
> interest in diversity cases; researched elements of
> quantum meruit and unjust enrichment claims; drafted
> declaration of Paul Yager; drafted declaration of Jeremy
> Stone for attorneys' fees [related]; emailed Paul Yager
> regarding his availability.

The majority of entries are substantially over-inclusive of services for matters unrelated to the counterclaim on which Parker-Hannifin prevailed. For this reason, the Court finds it appropriate to reduce the fee request by 50%. Accordingly the Court

ORDERS that Parker-Hannifin's first amended motion for attorney's fees is GRANTED in the amount of $3,756.25.

Because Omni has not filed any objections and because the Court finds the content of the proposed judgment otherwise acceptable, the Court

ORDERS that Parker-Hannifin's motion for entry of judgment is GRANTED. Final Judgment shall issue by separate document.

**SIGNED** at Houston, Texas, this 14th day of February, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-22-